UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

1  BERNABE TEJADA BATISTA,

2

3       Plaintiff,                          Civil No. 97-1430 (JAF)

4       v.

5  JOSE FUENTES AGOSTINI, et al.,

6

7       Defendants.

8

9                    **OPINION AND ORDER**

10       Plaintiff, Bernabé Tejada-Batista, ("Tejada") seeks damages

11  under the Civil Rights Act, 42 U.S.C. § 1983 (1988), for an alleged

12  violation of his First and Fourteenth Amendment rights, from

13  Defendant José A. Fuentes-Agostini, Attorney General of the

14  Commonwealth of Puerto Rico, in his personal capacity; Defendant

15  Lydia Morales, Director of the Special Investigations Bureau

16  ("S.I.B.") of the Commonwealth's Department of Justice ("D.O.J."), in

17  her personal capacity; Defendant Domingo Alvarez, Director of the

18  Corruption and Organized Crime Investigation Division ("C.O.C.I.D.")

19  of the S.I.B., in his personal capacity; Defendant Ernesto Fernández,

20  the Supervisor of the Homicide Section of the C.O.C.I.D., in both his

21  personal and official capacities; Defendant Antonio Franco,

22  Supervisor of the Intelligence Section of the C.O.C.I.D., in his

23  personal capacity; Defendant Cristóbal Irizarry, Supervisor of the

24  Stolen Vehicle Section of the C.O.C.I.D., in his personal capacity;

AO 72
(Rev 8/82)

Civil No. 97-1430 (JAF)                                                          -2-

and Defendant John Doe, a D.O.J. employee.  All positions held by

Defendants are stated as effective at the time relevant to this suit.

Defendants move for reconsideration of our Opinion and Order denying

their motions for summary judgement.

## I.

### Relevant Background

Given that Defendant's motion for reconsideration asserts no new

or contested facts, we restate our previous factual summary here.

Plaintiff was employed at the D.O.J. as an Assistant Agent for the

S.I.B. since approximately January 1987 until the D.O.J. terminated

his employment on March 4, 1997.  From early 1991 to January 4, 1994,

Plaintiff was on military leave which included active duty in

"Operation Desert Storm."  During this period, on or about June 14,

1993, while still an S.I.B. employee, Plaintiff was arrested and

charged with three felonies under Puerto Rico law involving domestic

violence: Abuse by Threat, Aggravated Abuse, and Aggravated Arson.

On September 13, 1993, following a trial, the Puerto Rico Superior

Court convicted Plaintiff of "Abuse" under the Puerto Rico Domestic

Abuse Prevention and Intervention Act. See 8 L.P.R.A. § 601 (1986);

33 L.P.R.A. § 3044 (1983).    After Plaintiff underwent a

rehabilitation program, the Puerto Rico Superior Court, on

November 7, 1995, set aside Plaintiff's conviction.  Defendants

allege that throughout these procedures in state court, Plaintiff

Civil No. 97-1430 (JAF)                                                    -3-

identified himself only as a member of the National Guard, not a

D.O.J. agent, for the purpose of avoiding disciplinary action by the

D.O.J.

In January 1995, Plaintiff was assigned to the Homicide Section

of the C.O.C.I.D. under the supervision of Defendant Fernández.

Several months later, Plaintiff was transferred to the section which

investigates corruption among government employees.

While working in this division, Plaintiff was an undercover

agent in a Dominican drug-trafficking gang. During this

investigation, he alleges that he witnessed co-workers

misappropriating public funds and allowing illegal drug transactions

to go unpunished. Plaintiff alleges that as a result, he was placed

in jeopardy and left without protection from the underworld he had

infiltrated. He subsequently moved his family out of Puerto Rico at

his own expense for their safety. On May 19, 1995, Plaintiff wrote

a memorandum bringing this situation to the attention of Defendant

Morales, through Defendants Alvarez and Franco. Plaintiff alleges

that Defendants took no action regarding this alleged official

corruption. Plaintiff also alleges that he asked for a transfer from

his undercover assignment, alleging that he feared that a government

informant with whom he worked and a hitman whom Plaintiff had

investigated may harm him, but was transferred to the Stolen Vehicle

Section, a division that Plaintiff implies constitutes a demotion.

Civil No. 97-1430 (JAF)                                                -4-

On April 23, 1996, Defendant Franco wrote a memorandum to Defendant Alvarez regarding Plaintiff's alleged misconduct in communicating with an informant without authorization, although only for personal purposes, and stating that he believed Plaintiff not to be fit for the job of an agent. On September 23, 1996, Defendant Irizarry wrote Defendant Alvarez a memorandum inquiring whether Plaintiff's paid military leave, a total of approximately sixty-seven days in 1996, was within the legally permitted scope. Defendant Alvarez requested that Defendant Morales refer this memorandum to the Personnel Division. On October 1, 1996, Elba de León, S.I.B. legal counsel on matters of Personnel and Human Resources, informed Defendant Morales that Plaintiff was on paid military leave in excess of the days legally allowed.

On December 10, 1996, the newspaper EL VOCERO published an article entitled, "S.I.B. Director and Assistant Denied Agent Transfer Although His Life Was In Danger."[1] The next day, EL VOCERO published a second article entitled, "Domingo Alvarez of the S.I.B. - Forbids Arrest in Drug Transactions," which described facts and circumstances of an undercover investigation.[2] Defendant Alvarez immediately wrote

---

[1]This is the translated title of the article which is originally in Spanish. The title in Spanish reads, "Negaron traslado agente aunque peligraba su vida."

[2]This is the translated title of the article which is originally in Spanish. The title in Spanish reads, "Domingo Alvarez del NIE Prohibe arresto en transacción drogas."

Civil No. 97-1430 (JAF)                                                    -5-

a memorandum to Defendant Morales regarding this information, which

he considered to be of a confidential nature, that Plaintiff had

revealed to the press.    Defendant Morales referred the letter to

S.I.B. Sub-Director Miguel Gierbolini, who referred the memorandum to

De León for evaluation.

        Also on December 11, 1996, on the basis of an anonymous

telephone call, the S.I.B. discovered that criminal charges for

domestic violence had been brought against Plaintiff approximately

two years earlier.    On December 12, 1996, Defendant Alvarez wrote

Defendant Morales a memorandum regarding these criminal charges,

which Morales referred to Gierbolini for a written recommendation to

the Attorney General.    Again, Gierbolini referred the memorandum to

De León for evaluation.

        In  January  1997,  Defendant  Fuentes-Agostini  was  appointed

Secretary of Justice.  On February 4, 1997, Gierbolini requested that

Plaintiff's employment be terminated and, on February 27, Defendant

Fuentes-Agostini signed Plaintiff's termination letter.   The D.O.J.

informed Plaintiff of his employment termination on March 4, 1997,

stating that the basis of the termination was his domestic violence

conviction.   The D.O.J. granted Plaintiff thirty days to request an

informal hearing, which was held on November 17, 1997.    At the

hearing, the only evidence Defendant Fuentes-Agostini presented in

Civil No. 97-1430 (JAF)                                      -6-

1    support of Plaintiff's dismissal was the domestic violence

2    conviction.  Plaintiff presented no evidence.

3        During this period, on March 31, 1997, EL VOCERO published a third

4    article regarding the S.I.B. entitled, "S.I.B. Ex-Agent - Thought He

5    Complied with Duty and Was Kicked Out."[3]

6                                    III.

7                                  **Analysis**

8

9        As we noted in our previous Opinion and Order, Plaintiff rests

10   his section 1983 claim upon the allegation that the D.O.J. terminated

11   his employment solely because he provided information to a local

12   newspaper, EL VOCERO, regarding alleged official misconduct and

13   corruption within D.O.J.  Arguing that they terminated Plaintiff's

14   employment solely because of his conviction for domestic violence,

15   Defendants refute this allegation.  In our June 29, 1998 Opinion and

16   Order, we found that "Defendants' true reason for terminating

17   Plaintiff's employment is a genuine issue of material fact the

18   resolution of which is the responsibility of the fact-finder." <u>Docket</u>

19

20   <u>Document No. 66</u>.  Consequently, we denied Defendants' motion for

21   summary judgment since a jury would resolve the motivation issue. <u>See</u>

22   FED. R. CIV. P. 56(c); <u>Lipsett v. University of P.R.</u>, 864 F.2d 881, 894

23   (1st Cir. 1988).

24   _____

25       [3]This is the translated title of the article which is originally
     in Spanish.  The title in Spanish reads, "Pensó cumplía deber y lo
26   botaron."

Civil No. 97-1430 (JAF)                                                    -7-

On reconsideration, Defendants propose that <u>Tang v. State of R.I., Dept. of Elderly Affairs</u>, 163 F.3d 7 (1st Cir. 1998), decided subsequent to our June 29, 1998 Opinion and Order, mandates that we reevaluate our holding requiring that the jury determine Defendants' motivation for firing Plaintiff. Loosely employing the three-step analysis outlined in <u>Tang</u>, Defendants maintain that Plaintiff's claims are not of a public concern, but rather "individual personal complaints about working conditions." <u>Docket Document No. 81</u>. Alternatively, Defendants, entirely omitting the second of <u>Tang</u>'s three-step analysis, reiterate their contention that they based Plaintiff's termination solely upon his prior conviction for domestic violence.[4]

Plaintiff disputes Defendants' contention that the content of his speech is not of public concern. He restates that his

---

[4]As another basis for reconsidering our denial of their summary judgment motion, Defendants assert, without any explanation or a single citation of authority, that Plaintiff misused his state-issued firearm. Since we reaffirm our denial of summary judgment for essentially the same reasons as our initial denial, this argument is, at best, totally irrelevant. Moreover, we decline "to review the qualified immunity defense in light of the fact that federal law criminalizes [P]laintiff's firearm possession[,] and a criminal offense would be in contravention of the Department of Justice['s] personnel regulations." <u>Docket Document No. 81</u>. Again, Defendants in their motion for reconsideration fail to elaborate further, provide any authority for their assertions, or refer us to a docketed document. In any case, we note that even if Plaintiff had violated and been convicted of firearm possession, which, as far as we know, is a purely hypothetical fact, the conviction would speak to Defendants' motivation for terminating his employment, an issue which necessarily goes to the jury, the fact-finder in this case.

Civil No. 97-1430 (JAF)                                                          -8-

complaints, which allegedly were initially raised with his superiors

and then the press, included: (1) the illegal use of public funds by

government agents; (2) the payment of public funds to an informant

who was committing criminal acts; (3) the placement of government

agents in danger and jeopardizing drug investigations at will; and

(4) the failure of a public agency empowered to investigate and

prosecute organized crime to make appropriate arrests.  Plaintiff

also alleges that as a result of his statements to the press, his

employer denied him adequate protection for his life, transferred him

to an inoperative division, and finally summarily terminated his

employment.  In sum, Plaintiff argues that his speech to EL VOCERO was

of public concern.  We agree.

      As noted by Defendants, Tang outlines the three-step analysis

which courts should apply to determine if a former public employee

has an actionable First Amendment freedom of speech claim against her

employer. See Faerber v. City of Newport, 51 F. Supp.2d 115, 120-22

(D.R.I. 1999) (applying standard); Perez v. Agostini, 37 F. Supp.2d

103, 108-12 (D.P.R. 1999) (same).  Accordingly, the three steps are:

            First, the court must determine whether [the
            plaintiff] made her statements "as a citizen
            upon matters of public concern."  If the speech
            involved matters not of public concern, "but
            instead . . . of personal interest, absent the
            most unusual circumstances, a federal court is
            not the appropriate forum in which to review the
            wisdom of a personnel decision taken by a public
            agency allegedly in reaction to the employee's

AO 72
(Rev 8/82)

Civil No. 97-1430 (JAF)                                               -9-

behavior." Second, the court must weigh the
strength of the employee's and the public's
First Amendment interests against the
government's interest in the efficient
performance of the workplace. Third, if the
employee's and the public's First Amendment
interests outweigh a legitimate governmental
interest in curbing the employee's speech, [the
plaintiff] must show that the protected
expression was a substantial or motivating
factor in an adverse employment action.

Tang, 163 F.3d at 12 (internal citations omitted). A court decides

the first two steps as a matter of law. See id.; see also, e.g.,

Johnson v. Clifton, 74 F.3d 1087, 1092 (11th Cir. 1996); Kincade v.

City of Blue Springs, Mo., 64 F.3d 389, 395 (8th Cir. 1995); Simon v.

City of Clute, Tex., 825 F.2d 940, 943 (5th Cir. 1987). But see

Faerber, 51 F. Supp.2d at 122 (stating that plaintiff must satisfy

the second and third prongs of Tang test at trial). The fact-finder,

however, determines the question of whether the speech motivated the

employer's decision to take adverse action against the employee. See

Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995)

(stating that the determination of an employer's reason for

discharging an employee was an issue of fact precluding summary

judgment); Broderick v. Roache, 996 F.2d 1294 (1st Cir. 1993) (stating

that, in a section 1983 action by police officer against police

official, the official's motive in disciplining plaintiff allegedly

in retaliation for his exercise of First Amendment rights was an

issue of fact precluding summary judgment); Caro v. Aponte-Roque, 878

AO 72
(Rev 8/82)

Civil No. 97-1430 (JAF)                                                    -10-

F.2d 1 (1st Cir. 1989) (stating that in suit involving an alleged

First Amendment violation, the motivation behind the employer's

decision for firing plaintiffs was an issue of fact precluding

summary judgment); see also, e.g., Wulf v. City of Wichita, 883 F.2d

842, 856 (10th Cir. 1989); Crawford v. Garnier, 719 F.2d 1317, 1323

(7th Cir. 1983).    We, thus, decide whether Plaintiff's speech

concerned the public or was primarily a private matter.

        Given that Plaintiff's allegations to the press implicated

government officials in misconduct that jeopardized the lives of law

enforcement agents and corruption that squandered the public's trust,

we have no alternative but to find that Plaintiff's speech was of

public concern. See O'Connor v. Steeves, 994 F.2d 905, 915 n.6 (1st

Cir. 1993) (finding allegations of corruption, impropriety, and other

malfeasance by public officials constitute matters of inherent public

concern); Agostini, 37 F. Supp.2d at 109 (finding allegations of

mishandled drug investigation and misappropriation of government

resources raise specter of public corruption and mismanagement); see

also, e.g., Wulf, 883 F.2d at 857.

        Having determined that Plaintiff's speech is protected, we

proceed to the next phase of inquiry - whether Plaintiff's First

Amendment rights, as well as the public's interest in the information

about which the employee spoke, outweigh the government's interest in

efficient agency performance. See Tang, 163 F.3d at 11 (citing

Civil No. 97-1430 (JAF)                                              -11-

Pickering v. Board of Educ. of Township High School, 391 U.S. 563,

568 (1968)).  To make this determination, a court should consider the

time, place, manner, and context of the employee's speech.  See

Connick v. Myers, 461 U.S. 138, 147-48 (1983).  A court should also

assess whether the employee's speech disrupted harmony among co-

workers; impeded superiors from maintaining discipline; interfered

with the agency's regular operations; or detracted from the speaker's

job performance.  See Rankin v. McPherson, 483 U.S. 378, 388 (1987).

Generally, courts afford much deference to a public employer's

disciplinary decisions concerning its personnel. See Agostini, 37 F.

Supp.2d at 110 (citing Connick, 461 U.S. at 151-52) (other citation

omitted)).  This is particularly true in law enforcement, where

agents often face life or death situations and must rely upon the

discipline and esprit de corps among their comrades to temper this

danger. See Breuer v. Hart, 909 F.2d 1035, 1041 (7th Cir. 1990).

Nevertheless, a public employer needs to demonstrate that the

employee's speech detrimentally impacted working relationships within

the agency. See Brasslett v. Cota, 761 F.2d 827, 845 (1st Cir. 1985).

In this case, after having read the newspapers articles in

question, we find that the nature of Plaintiff's accusations in the

press implicates the integrity and effectiveness of a law enforcement

agency, entrusted by the general populace to secure their safety and

combat crime.  Moreover, Plaintiff's allegations sufficiently detail

AO 72
(Rev 8/82)

Civil No. 97-1430 (JAF)                                           -12-

events so as to permit a reasonable finding of credibility, although

we make no such finding now.  We also find significant the fact that

Plaintiff pursued official channels of redress within his employing

agency to purported little avail.

    With regard to the impact of Plaintiff's speech on his former

employer, Defendants proffer that Plaintiff provided information to

the local newspaper concerning ongoing criminal investigations which

consequently endangered the lives of potential witnesses and law

enforcement agents, limited the availability of material evidence,

and disrupted the success of ongoing and future investigations. See

Docket Document No. 60.    While we are greatly concerned by the

gravity of these allegations, Plaintiff's claims are equally severe.

Furthermore, we believe that, due to the nature of Plaintiff's

assertions, greater transparency and accountability on the part of

public officials are required to address the issues raised by him.

Finally, we have seen no proffered evidence that Plaintiff's

protected speech to EL VOCERO actually detrimentally impacted D.O.J.'s

operations.

    Consequently, we find that Plaintiff's protected speech

outweighs the D.O.J.'s interests in, inter alia, harmony and good

supervisor-employee relations. See O'Connor, 994 F.2d at 915 (finding

plaintiff's disclosures of alleged public corruption occupy highest

rung within First Amendment hierarchy and weigh heavily in favor of

AO 72
(Rev 8/82)

Civil No. 97-1430 (JAF)                                    -13-

First Amendment protection against retaliation); <u>Santos v. United States Customs Serv.</u>, 642 F.2d 21, 24-25 (1st Cir. 1981). <u>But</u> <u>see</u> <u>also</u> <u>Breuer</u>, 909 F.2d at 1041 (upholding dismissal of deputy sheriff for whistle blowing on alleged corruption by sheriff).

If a court resolves the <u>Pickering</u> balancing in favor of the plaintiff, the next stage of inquiry is whether the plaintiff's protected speech was the substantial or motivating factor in the adverse employment action taken against him. <u>See</u> <u>O'Connor</u>, 994 F.2d at 913 (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle</u>, 429 U.S. 274, 287 (1977)). However, in this case, the jury is the fact-finder charged with determining Defendants' motivating factor for terminating Plaintiff's employment. <u>See</u> <u>Woodman</u>, 51 F.3d at 1094.

**IV.**

**<u>Conclusion</u>**

In accordance with the preceding analysis, we **DENY** Defendants' "Motion for Reconsideration of Order under Recent First Circuit Case Law," <u>Docket Document No. 81</u>, and **REAFFIRM** our denial of Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this *17th* day of March, 2000.

JOSÉ ANTONIO FUSTE
U. S. District Judge