IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
2003 FEB 23 PM 12: 17
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

BERNABE TEJADA BATISTA, et al.,

Plaintiffs

v.                                                    CIVIL 97-1430(JAG)

JOSE FUENTES AGOSTINI, et al.,

Defendants

## OPINION AND ORDER

### I. FACTUAL BACKGROUND

Plaintiff, Bernabé Tejada Batista, brought this action under 42 U.S.C. § 1983, claiming the defendants violated rights guaranteed to him by the First and Fourteenth Amendments of the United States Constitution. The defendants are former Attorney General of Puerto Rico, José Fuentes Agostini; Lydia Morales, Director of the Special Investigation Bureau (S.I.B.) of the Puerto Rico Department of Justice (D.O.J.); Domingo Álvarez, Director of the Corruption and Organized Crime Investigation Division (C.O.C.I.D.) of the S.I.B.; Ernesto Fernández, presently Interim Director of the C.O.C.I.D., but who at the time relevant to this suit was the Supervisor of the Homicide Section of the C.O.C.I.D.; Cristobal Irizarry, Supervisor of the Stolen Vehicle Section of C.O.C.I.D.; Antonio Franco, Supervisor of the Intelligence Section of the C.O.C.I.D.; and Miguel Gierbolini, District Attorney assigned to the S.I.B., who at the time relevant to this suit answered to the Director of the S.I.B. and the Attorney General.

Beginning in 1987, plaintiff was employed by the D.O.J. as an assistant agent for the S.I.B. Plaintiff was on military leave, including Operation Desert Storm service, from early



CIVIL 97-1430(JAG)                                        2

1991 to January 14, 1994.[1] On or about June 14, 1993, plaintiff was arrested and convicted of "Abuse," a felony under the Puerto Rico Domestic Abuse Prevention and Intervention Act. See 8 P.R. Laws. Ann. § 601 (1999); 33 P.R. Laws Ann. § 3040 (1999). Such conviction was subsequently set aside by the Puerto Rico Superior Court after plaintiff completed a rehabilitation program.

Upon returning to work in January 1995, plaintiff was assigned to the Homicide Section of the C.O.C.I.D., but several months later he was transferred to the section that investigates corruption among government employees. As part of his duties in this section, plaintiff infiltrated a Dominican drug-trafficking gang as an undercover agent. Plaintiff alleges that during the course of said investigation, he witnessed some instances of corruption within the S.I.B. He claims to have observed co-workers misappropriating public funds and allowing illegal drug transactions to go unpunished. As a result of such actions, plaintiff alleges that his life was put in jeopardy and that he had to move his family out of Puerto Rico to ensure their safety. On May 19, 1995, plaintiff alerted defendant Lydia Morales of the corruption situation by way of a memorandum, as well as through co-defendants Domingo Álvarez and Antonio Franco. Plaintiff claims that no action was taken.

On December 10 and 11, 1996, "El Vocero" newspaper published two articles detailing the allegations of corruption made by plaintiff. Simultaneously, on December 11, 1996, an alleged anonymous caller revealed plaintiff's conviction for domestic abuse to the S.I.B. As soon as defendant Fuentes Agostini was appointed Attorney General, and supposedly based on plaintiff's conviction, co-defendant Gierbolini recommended that plaintiff's employment be terminated. On February 27, 1997, co-defendant Fuentes

---

[1] This factual background roughly follows Judge Fusté's summary of March 17, 2000.

CIVIL 97-1430(JAG)                                3

Agostini signed the termination letter, which was received by plaintiff on March 4, 1997. Although co-defendants have at all times claimed that the reason for the dismissal was the domestic abuse conviction, plaintiff contends that the reason for termination was the articles published by "El Vocero." Plaintiff argues that his dismissal violated the Freedom of Speech rights guaranteed to him by the First and Fourteenth Amendments of the United States Constitution.

## II. PROCEDURAL HISTORY

On June 29, 1998, United States District Judge José A. Fusté issued an opinion and order denying a number of motions filed by the co-defendants. (Docket No. 66.) The opinion and order denied co-defendant Fuentes Agostini's motion to dismiss (Docket No. 18), co-defendant Lydia Morales' motion for summary judgment (Docket No. 32.), and co-defendants Álvarez, Fernández, Franco and Irizarry's motion for summary judgment. (Docket No. 41.) Defendant Lydia Morales moved the court for reconsideration of the denial of her motion for summary judgment (Docket No. 69), which the court also denied. Subsequently, all defendants moved for reconsideration of the June 29, 1998 opinion and order arguing that recent First Circuit caselaw mandated a different outcome. The court again denied defendants' motion. (Docket No. 86.) Tejada Batista v. Fuentes Agostini, 87 F. Supp. 2d 72, 78 (D.P.R. 2000) (Fusté, J.)

On July 12, 2000, the case was assigned to newly appointed United States District Judge Jay García Gregory. (Docket No. 89.) On July 10, 2001, co-defendants Álvarez, Fernández, Franco, Irizarry, and Gierbolini filed a "Supplemental Motion for Summary Judgment." (Docket No. 117.) On the same day, at a settlement conference, the court stated that it would not entertain any more motions for summary judgment. (Docket No. 118.) Nevertheless, on August 17, 2001, co-defendant Fuentes Agostini again moved for summary judgment. (Docket No. 122). On August 28, 2001, the motion was stricken

CIVIL 97-1430(JAG)                                    4

from the record. (Docket No. 126.) The following day co defendant Fuentes Agostini again moved for reconsideration. (Docket No. 129.) On September 4, 2001, the parties consented that the case be tried before a United States magistrate judge. (Docket No. 131.) Both the supplemental motion for summary judgment and the motion for reconsideration were denied by me. (See Docket Nos. 138 and 142.) Trial was then set for October 29, 2001. (Docket No. 140.)

Co-defendants Morales, Álvarez, Fernández, Franco, Irizarry and Gierbolini filed a notice of appeal of Judge Fusté's opinion and order denying their motion for summary judgment as well as from my order denying their supplemental motion for summary judgment. (Docket No. 146.) The proceedings were stayed. The court of appeals denied review on the grounds that the appeal of Judge Fuste's June 29, 1998's opinion and order was untimely filed and that the appeal of my interlocutory order presented an issue that was not appealable. Tejada Batista v. Morales, No. 01-2664, slip op. at 1 (1st Cir. Aug. 13, 2002) (Docket No. 153). The case is now before the court on defendant Fuentes Agostini's urgent motions requesting an order[2] stating that his motion is denied on the merits for appeals purposes. (See Docket Nos. 141 and 163.)[3]

III. ANALYSIS

Defendants generally argue that as a matter of law the case should be dismissed because they are shielded from liability pursuant to the doctrine of qualified immunity. They claim that plaintiff was discharged due to his conviction for domestic violence.

---

[2] The discussion in the instant opinion also disposes of co-defendant's Morales, Álvarez, Fernandez, Franco, Irizarry and Gierbolini's motion requesting an order. (Docket No. 139.)

[3] Fuentes-Agostini argues that the consent to the exercise of jurisdiction by this magistrate judge was given on the condition that I would rule on the pending motions.

CIVIL 97-1430(JAG)                                            5

Therefore, their actions were objectively reasonable since dismissal was required both under state and federal law. Plaintiff argues to the contrary claiming that the reason for his dismissal was the information published in "El Vocero" in violation of his clearly established constitutionally protected right to freedom of speech. For the reasons set forth below, I find that summary judgment on qualified immunity grounds is inappropriate, since there are factual issues to be resolved by the trier of fact.

The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In defining the limits of this good-faith defense, the Supreme Court has stated that "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, . . . a person who suffers injury caused by such conduct may have a cause of action." Id. at 819 (footnote omitted). "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" Acevedo-García v. Vega-Monroig, 204 F.3d 1, 10 (1st Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Thus the court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right. See Fletcher v. Town of Clinton, 196 F.3d 41, 45 (1st Cir. 1999). In other words, once it is determined that the alleged conduct violates a clearly established constitutional right, the court must still determine whether an objectively reasonable official with the information that he or she possessed at the time would have believed that his or her conduct was lawful. See McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991).

CIVIL 97-1430(JAG)                                  6

It has already been held that the question of co-defendants' motivation in terminating plaintiff from employment is one for the trier of fact to determine. (See Opinion and Order of June 29, 1998, Docket No. 66.); see also Tejada Batista v. Fuentes Agostini, 87 F. Supp. 2d at 78. If the dismissal is found by the jury to be an act of retaliation against plaintiff exercising his First Amendment rights, that would, more likely than not, take co-defendants outside the ambit of qualified immunity protection. If on the other hand, the trier of fact determines that his conviction for domestic abuse is the motivating factor for plaintiff's termination, they are not only protected by qualified immunity, they are simply not liable under section 1983. In other words, the determination of whether co-defendant violated clearly established constitutional rights cannot be answered without the factual determination by the trier of fact of co-defendant's real motivation to terminate plaintiff. This objectively reasonable inquiry is highly fact specific, Swain v. Spinney, 117 F.3d 1, 9-10 (1st Cir. 1997), and in the context of qualified immunity, summary judgment is precluded when disputed material facts make pre-trial solution impossible. Kelley v. Laforce, 288 F.3d 1, 7 (1st Cir. 2002).

It is now time for this vintage case to stop aging.

## IV. CONCLUSION

In view of the foregoing, I reaffirm my denial of co-defendant Fuentes Agostini's motion for reconsideration of the order striking his motion for summary judgment. This order also disposes of Docket Nos. 129, 139, 141 and 163. Trial is to begin as scheduled.

SO ORDERED

In San Juan, Puerto Rico, this 23d day of February, 2003.

JUSTO ARENAS
United States Magistrate Judge