IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BERNABE TEJADA-BATISTA,

Plaintiff

v.                                               CIVIL 97-1430 (JAG)(JA)

JOSE FUENTES-AGOSTINI, et al.,

Defendants

## OPINION AND ORDER

The present case is an action brought by plaintiff, Bernabé Tejada-Batista, under 42 U.S.C. § 1983, claiming that he was retaliated against for exercising his constitutionally protected rights to freedom of speech. Trial commenced on February 24, 2003, and at the close of plaintiff's case on February 25, 2003, co-defendants José Fuentes-Agostini, Lydia Morales, Domingo Álvarez, Antonio Franco, Ernesto Fernández, Cristobal Irizarry, and Miguel Gierbolini moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. They challenge the sufficiency of the evidence presented at trial, claiming that no reasonable jury could find in plaintiff's favor considering the evidence presented by him. After listening to extensive argument by the parties, and for the reasons set forth below, I find that co-defendants José Fuentes-Agostini, Ernesto Fernández, and Cristobal Irizarry are entitled to judgment as a matter of law. Therefore, as to them, co-defendants' Rule 50 motion is GRANTED. As to co defendants Morales, Álvarez, Franco, and Gierbolini, the motion is DENIED.

## I. BACKGROUND

In 1987, plaintiff was employed by the Puerto Rico Department of Justice ("D.O.J.") as an agent for the Special Investigations Bureau ("S.I.B."). From early 1991 to January 14, 1994, plaintiff was on military leave. In June 1993, while on such leave,




CIVIL 97-1430 (JAG)(JA)                              2

plaintiff was convicted of Domestic Abuse, a felony under the Puerto Rico Domestic Abuse Prevention and Intervention Act. See 8 P.R. Laws Ann. § 601 (1999); 33 P.R. Laws Ann. § 3040 (1999). Said conviction was, however, set aside after plaintiff completed a diversion program provided for by the same Act.

Upon returning to work in 1995, plaintiff was assigned to the Homicide section of the Corruption and Organized Crime Investigation Division ("C.O.C.I.D.") of the S.I.B. under the supervision of co-defendants Domingo Álvarez and Ernesto Fernández. Plaintiff was subsequently transferred to the section that investigates corruption among government employees. As part of his duties in said section, plaintiff worked as an undercover agent and infiltrated a Dominican drug-trafficking gang. During the course of said investigation he witnessed several instances of corruption within the S.I.B., including the misappropriation of public funds and the allowing of drug transactions to go unpunished. As a result, his life was put in jeopardy.

Plaintiff alerted co-defendant Lydia Morales—who at the time was the director of the S.I.B.—of these events in a memorandum sent to her on May 19, 1995. He similarly informed co-defendants Álvarez and Antonio Franco, the Supervisor of Intelligence at C.O.C.I.D. No action was taken. Simultaneously, plaintiff requested a transfer because he feared for his life. However, plaintiff was not granted the specific transfer he requested. He was instead transferred to the Stolen Vehicle section of the C.O.C.I.D. under the supervision of co-defendant Cristobal Irizarry. There, he was not given any significant work, was assigned no official vehicle, and was practically given nothing to do.

On December 10 and 11, 1996, the "El Vocero" newspaper published two articles on the corruption allegations made by plaintiff. On December 11, co-defendant Álvarez wrote a memorandum to co-defendant Morales claiming that plaintiff divulged confidential

CIVIL 97-1430 (JAG)(JA)                            3

information in violation of Article 13 of Law 28 of July 13, 1978[1] and recommended that he be discharged and criminal charges brought. Álvarez wrote a second memorandum to Morales alerting her of plaintiff's 1993 conviction, again suggesting that plaintiff should be discharged for this reason. The S.I.B. allegedly learned of plaintiff's conviction through a "telephone tip" received at the agency simultaneous with the publication of newspaper articles. The matter was referred by Morales to co-defendant Miguel Gierbolini, who at the time was the district attorney assigned to the S.I.B., for evaluation and a recommendation to the Secretary of Justice. Gierbolini recommended plaintiff's dismissal, stating the domestic abuse conviction as the reason for said action. On February 27, 1997, the newly

---

[1] The information under custody of the [Special Investigations] Bureau, gathered for law enforcement purposes, may be subject to examination by any citizen, provided, that in doing so:

. . .

    (d) he does not reveal the identity of a confidential source;
    (e) he does not reveal investigative techiques [sic] or procedures;
    (f) he does not endanger the life or physical safety of law enforcement personnel or witnesses.

    Only the Director, with the approval of the Secretary or the Governor, may authorize the release of information related to the functions, operations or activities of this Bureau. Any employee, functionary or official, or person, who by carelessness or omission, or deliberately, offers information, gives publicity to, or publicly comments on any action, activity, investigation or official act of this Bureau, shall be guilty of a felony and upon conviction shall be punished by imprisonment for a fixed term of three (3) years. If there are aggravating circumstances the term may be increased up to a maximum of five (5) years; if there are extenuating circumstances the term may be reduced to a minimum of two (2) years.

3 P.R. Laws Ann. § 138/ (1999).

CIVIL 97-1430 (JAG)(JA)                              4

appointed Secretary of Justice, co-defendant José Fuentes-Agostini adopted the recommendation and signed plaintiff's termination letter. Plaintiff received the letter on March 4, 1997, after reporting to the S.I.B. from military duty. The letter advised plaintiff of his right to request an informal administrative hearing, which he indeed requested. The hearing was held sometime in November of 1997 but the decision to terminate plaintiff was not disturbed. Plaintiff then filed the instant action.

## II. DISCUSSION

### A. The Standard Under Federal Rule of Civil Procedure 50

Rule 50 of the Federal Rules of Civil Procedure provides in relevant part as follows:

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a). When presented with a motion for judgment as a matter of law under Rule 50, all the evidence and all the reasonable inferences that can be drawn from said evidence must be considered by the court in the light most favorable to the non-moving party. Santos-Espada v. Cancel-Lugo, 312 F.3d 1, 2 (1st Cir. 2002) (citing Andrade Jamestown Hous. Auth., 82 F.3d 1179, 1186 (1st Cir. 1996)). "Such motion may be granted only if 'the evidence, . . ., is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome.'" Interstate Litho Corp. v. Brown, 255 F.3d 19, 27 (1st Cir. 2001) (quoting FHS Props. Ltd. v. BC Assocs., 175 F.3d 81, 85 (1st Cir. 1999)), cert. denied, 534 U.S. 1066 (2001). In other words, the

CIVIL 97-1430 (JAG)(JA)                            5

motion should be granted when, as a matter of law, only one conclusion can be reached by a reasonable jury. Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 251 (1st Cir. 2000) (quoting Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996)). "A mere scintilla of evidence will not rise to a triable issue of fact necessary to avoid dismissal under Rule 50." Irvine v. Munrad Skin Research Lab. Inc., 194 F.3d 313, 317 (1st Cir. 1999). In view of this standard, the question that needs to be resolved is whether plaintiff has proffered sufficient evidence with respect to his First Amendment claim to avoid dismissal under Rule 50.

### B. The First Amendment Claim

The right of a public employee to comment on matters of public concern is protected by the First Amendment and is not relinquished by virtue of government employment. Connick v. Myers, 461 U.S. 138, 140 (1983) (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)). However, there must be a balance between the First Amendment right to comment on matters of public concern and the state's interest as an employer in promoting efficiency of the public service it performs. Pickering v. Bd. of Educ., 391 U.S. at 568. Pursuant to this balancing test, a whistleblower is protected from retaliation if his or her speech interests, together with the public's right to hear the speech, outweigh governmental needs as an employer. See Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002).

To determine whether an employee has an actionable first amendment claim, the jurisprudence has established a three-part test. Torres-Rosado v. Rotger-Sabat, 204 F. Supp. 2d 252, 258 (D.P.R. 2002). First, the speech engaged in must involve a matter of public concern. Connick v. Myers, 461 U.S. at 147. If the expression does not relate to a matter of public concern, but rather to a personal interest, no valid claim may be asserted.

CIVIL 97-1430 (JAG)(JA)                          6

Id. Secondly, as described above, the court must determine whether the employee's First Amendment interest outweighs the government's interest in curbing the employee's expression. Pickering v. Bd. of Educ., 391 U.S. at 568. If these two prongs are met, then a plaintiff must show that the adverse employment action was substantially motivated by the protected expression. O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir. 1993). The first two prongs are amenable to resolution by the court for they present questions of law, but the third prong normally involves questions of fact that the jury must determine. See Nethersole v. Bulger, 287 F.3d 15, 18-19 (1st Cir. 2002). Once an employee has satisfied this test, the burden shifts to the employer to prove by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

In the instant case, it has already been determined that, as a matter of law, plaintiff satisfied the first two prongs of the test. In other words, it is the law of the case that the expressions made by the plaintiff involved matters of public concern and that his interest in commenting on such matters outweighed the interest of the government in efficient public service. Thus, the only issue for determination by the jury in this case is whether the motivating factor for the alleged adverse employment action was plaintiff's exercise of his freedom of speech rights. Plaintiff has to present sufficient evidence from which a reasonable jury can find in his favor as to this issue. If he fails to do so, then co-defendants' motion for judgment as a matter of law must be granted. I analyze the evidence proffered by plaintiff with respect to each co-defendant.

*1. José Fuentes-Agostini*

Plaintiff presented virtually no evidence from which a reasonable jury could make a finding that co-defendant Fuentes-Agostini is liable to plaintiff under section 1983 and

CIVIL 97-1430 (JAG)(JA)                              7

the First Amendment. Plaintiff's evidence simply showed that Fuentes-Agostini was appointed Secretary of Justice and took office in January of 1997. The evidence also demonstrated that Fuentes-Agostini signed plaintiff's termination letter on February 27, 1997, adopting the recommendation of Miguel Gierbolini that plaintiff be discharged for his domestic abuse conviction. Nothing in plaintiff's evidence established that Fuentes-Agostini's motivation for signing the termination letter was in anyway related to the publication of the newspaper articles or plaintiff's denouncement of corruption. The evidence similarly fell short of establishing Fuentes-Agostini's knowledge of plaintiff's protected expressions. Plaintiff nevertheless contends that a reasonable inference can be drawn from the evidence presented. He suggests that from the scanty evidence described above, a reasonable inference can be made that co-defendant Fuentes-Agostini knew of the newspapers articles and was motivated by them. He further claims that it is reasonable to expect that a newly appointed Secretary of Justice will be informed of all the media publications that relate to the Department of Justice, and that when he signed the termination letter he must have been presented with plaintiff's file in which the memoranda containing plaintiff's expressions were addressed. All of these, plaintiff contends, creates a reasonable inference that Fuentes-Agostini was motivated by the plaintiff's exercise of First Amendment rights at the time he signed the termination letter. I disagree.

There is no doubt an issue can be submitted to the jury when there is a reasonable inference that can be drawn from the evidence supporting the possibility of a finding in plaintiff's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, there is a significant difference between a reasonable inference and pure speculation. It has been held that more than mere speculation is required to justify the submission of an issue to the jury. Intercity Maint. Co. v. Local 254, Serv. Employee Int'l

CIVIL 97-1430 (JAG)(JA)                                8

Union, AFL-CIO, 241 F.3d 82, 86 (1st Cir. 2001). In this case plaintiff's evidence of Fuentes-Agostini's motivation is nothing but conjecture and guesswork.

In addition, under section 1983 the doctrine of *respondeat superior* does not apply to impose supervisors liability. See Figueroa-Torres v. Toledo-Dávila, 232 F.3d 270, 279 (1st Cir. 2000); Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91 (1st Cir. 1994). Therefore, a supervisor can only be found liable for his own acts or omissions. Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Indeed section 1983 only imposes liability on those who actually cause the deprivation of rights. Álvarez Sepúlveda v. Puerto Rico, 218 F. Supp. 2d 170, 175 (D.P.R. 2002). There is simply nothing in the evidence proffered by plaintiff to affirmatively link co-defendant Fuentes-Agostini to any intentional deprivation of constitutional rights. All that the evidence established is that he signed the termination letter adopting a recommendation that plaintiff had violated internal regulations and that his domestic abuse conviction mandated dismissal. Plaintiff has failed to "introduce[] at trial sufficiently adequate evidence for the jury to determine the plausibility of" co-defendant's motivations in order to survive a motion under rule 50. Irvine v. Munrad Skin Research Lab., 194 F.3d at 317. Thus, I find that co-defendant Fuentes-Agostini is entitled to judgment as a matter of law. Accordingly, co-defendants' motion under Rule 50 is GRANTED and the case dismissed as to co-defendant José Fuentes-Agostini.

*2. Ernesto Fernández and Crsitobal Irizarry*

Co-defendants Ernesto Fernández and Cristobal Irizarry find themselves in a similar position. The evidence presented at trial fails to establish as to them a triable issue respecting a possible violation of plaintiff's First Amendment rights. As for co-defendant Fernández, the only reference that the evidence makes is that in 1994 plaintiff was under

CIVIL 97-1430 (JAG)(JA)                              9

his supervision at the C.O.C.I.D. Plaintiff also testified that upon returning to work in 1997 from military duty, co-defendant Fernández took away his firearm for not being qualified. The reason for such action was that plaintiff had not completed firearms qualification in a year. It was also testified by plaintiff that it was co-defendant Fernández who served him with the termination letter at his home. As for co-defendant Irizarry, the only evidence was that when plaintiff was transferred to the Stolen Vehicles Section, Irizarry was his supervisor and that he only gave him one investigation and no official vehicle to conduct it.

The evidence outlined above is not sufficient to establish that adverse employment actions, if any, where motivated by plaintiff's exercise of First Amendment rights. Aside from the evidence described above, the plaintiff did not establish co-defendants' knowledge of the corruption denouncements or the newspaper articles. Plaintiff had the burden of submitting sufficient evidence from which a reasonable jury could infer an intentional deprivation of constitutional rights on the part of co-defendants Férnandez and Irrizary. He simply had not done so; therefore, plaintiff fails to justify submitting the issues to the jury. Consequently, I find that co-defendants Ernesto Fernández and Cristobal Irizarry are entitled to judgment as a matter of law. Their motion under Rule 50 is GRANTED.

*3. Lydia Morales, Domingo Álvarez, Antonio Franco and Miguel Gierbolini*

As to these co-defendants the situation is different. There is sufficient evidence presented by the testimony of plaintiff and the documentary evidence from which a reasonable trier of fact could find in favor of plaintiff. Specifically co-defendants Álvarez, Franco, and Morales were all personally alerted of plaintiff's allegations of corruption and safety concerns. Nothing was done. As soon as plaintiff went to the press to denounce the inaction, co-defendant Álvarez wrote a memorandum recommending plaintiff's discharge.

CIVIL 97-1430 (JAG)(JA)                    10

A second memorandum from Álvarez to Morales was the one that included the domestic abuse conviction as an alternative basis for plaintiff's termination. Co-defendant Álvarez claims he learned about said conviction from a tip received at the S.I.B. However, the testimony of plaintiff showed that co-defendant Álvarez knew of the domestic abuse conviction since 1993. The evidence showed that these memoranda were submitted by Morales to co-defendant Gierbolini for recommendation to the Secretary.

As for Miguel Gierbolini, the evidence showed that he was the person in charge of evaluating and recommending to the Secretary of Justice the course of action respecting plaintiff's future at the Department of Justice. His knowledge of plaintiff's expressions was established by the evidence and there is no question that his recommendation to terminate plaintiff is an adverse employment action. There is sufficient evidence proffered from which the jury could infer a retaliatory motive based on plaintiff's whistleblowing. As sole judges of the facts, the jury is presented with a factual dispute regarding co-defendants' motivations. It is for them to determine whether plaintiff's dismissal was based on his protected speech or truly based on his domestic abuse conviction. I find that the plaintiff proffered sufficient evidence so as to create a triable issue of fact with respect to these co-defendants. For these reasons, co-defendants Franco, Álvarez, Morales, and Gierbolini are not entitled to judgment as a matter of law and their motion under Rule 50 is hereby DENIED.

## IV. CONCLUSION

In view of the reasons stated in this opinion, I find that there is not enough evidence to submit the case to the jury with respect to co-defendants José Fuentes-Agostini, Ernesto Fernández, and Cristobal Irizarry. As to them, co-defendants' motion for judgment as a matter of law is GRANTED and the case dismissed. Plaintiff has, however, presented

CIVIL 97-1430 (JAG)(JA)                11

sufficient evidence as to co-defendants Álvarez, Morales, Franco, and Gierbolini from which a reasonable jury can find in his favor. Accordingly, co-defendants motion under Rule 50 is DENIED with respect to these remaining co-defendants.

SO ORDERED

In San Juan, Puerto Rico, this 10th day of March, 2003.

JUSTO ARENAS
United States Magistrate Judge