IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BERNABÉ TEJADA-BATISTA,

Plaintiff

v.                                              CIVIL 97-1430 (JAG) (JA)

JOSÉ FUENTES AGOSTINI, et al.,

Defendants

## OPINION AND ORDER

This matter is before the court on co-defendants Lydia Morales and Domingo Álvarez' motion for judgment notwithstanding the verdict under Federal Rule of Civil Procedure 50. (Docket No. 184.) Alternatively, the co-defendants move for a new trial or to alter or amend the judgment entered against them, pursuant to Federal Rule of Civil Procedure 59. For the reasons that I explain below, co-defendants' motion is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bernabé Tejada-Batista worked as an agent for the Special Investigations Bureau ("S.I.B") of the Puerto Rico Department of Justice. He did so from 1987 until 1997 when he was summarily dismissed. The complaint filed on March 25, 1997 (Docket No. 1) alleges, *inter alia*, that plaintiff's discharge was an act of retaliation motivated by the exercise of his rights to freedom of speech protected by the First Amendment. The specific allegation is that plaintiff was terminated after he denounced some instances of corruption and improper conduct within the S.I.B. His public denouncements were published in a local newspaper. Plaintiff's case is brought under 42 U.S.C. § 1983.

The defendants are former Attorney General of Puerto Rico, José Fuentes-Agostini; Lydia Morales, Director of the Special Investigation Bureau (S.I.B.) of the Puerto Rico Department of Justice; Domingo Álvarez, Director of the Corruption and Organized Crime



CIVIL 97-1430 (JAG) (JA)                                   2

Investigation Division (C.O.C.I.D.) of the S.I.B.; Ernesto Fernández, presently Interim Director of the C.O.C.I.D., but who at the time relevant to this suit was the Supervisor of the Homicide Section of the C.O.C.I.D.; Cristobal Irizarry, Supervisor of the Stolen Vehicle Section of C.O.C.I.D.; Antonio Franco, Supervisor of the Intelligence Section of the C.O.C.I.D.; and Miguel Gierbolini, District Attorney assigned to the S.I.B., who at the time relevant to this suit answered to the Director of the S.I.B. and the Attorney General.

The case was called for jury trial on February 24, 2003. The jury returned a verdict in favor of plaintiff and against co-defendants Lydia Morales and Domingo Álvarez on February 27, 2003.[1] Plaintiff was awarded $125,000 for loss of income.

Co-defendants Morales and Álvarez moved for judgment as a matter of law at the close of plaintiff's evidence. They renewed their motion before the case went to the jury. The crux of their argument is that Mr. Tejada's First Amendment rights were not violated since the expressions at issue did not involve matters of public concern. It was also argued by the co-defendants that they were entitled to qualified immunity because it was objectively reasonable for them to dismiss plaintiff given that he had been convicted of violating Law 54, a felony under Puerto Rico law. Both motions were denied by me. The reasons for such denial are explained at length in prior opinions. (See Docket Nos. 165, 183.) However, the rationale for my denial of judgment as a matter of law was in general based on a finding that: (1) as a matter of law, plaintiff's expression involved matters of public concern; (2) the issue of qualified immunity required consideration of factual issues

---

[1] Judgment as a matter of law was entered in favor of co-defendants José Fuentes-Agostini, Ernesto Fernández and Cristobal Irizarry, and the case was dismissed as to them. (See Docket Nos. 172, 173, 183.) The jury specifically exonerated Antonio Franco and Miguel Gierbolini from liability. (See Docket No. 178.)

CIVIL 97-1430 (JAG) (JA)                              3

within the province of the jury; and (3) plaintiff had presented sufficient evidence to justify the submission to the jury regarding co-defendants' motivations for discharging him.

In support of the Rule 50 motion, the co-defendants argue that, as a matter of law, judgment must be entered in their favor with respect to the First Amendment claim. Alternatively, the co-defendants move for a new trial or to alter or amend the judgment. It is their contention that the award of damages was against the clear weight of the evidence, or at the very least, subject to remittitur for being excessive.

Plaintiff opposes both motions. (Docket No. 186.) His opposition to judgment as a matter of law is grounded on the same arguments raised at trial on the qualified immunity and whistleblowing issues. In addition, plaintiff opposes remittitur of the award claiming that it was based on substantial evidence presented at trial and that it is conservative at best.

## ANALYSIS

### I. Co-defendants Motion for Judgment Notwithstanding the Verdict

In reviewing co-defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b),[2] I begin my analysis with bedrock principles. A verdict should only be set aside if the evidence at trial was so strongly and overwhelmingly

---

[2] If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-- and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).

CIVIL 97-1430 (JAG) (JA)                    4

inconsistent with the verdict that no reasonable jury could have returned it. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 393 (1st Cir. 2002). It has also been stated that "[o]nce a jury renders a verdict, a 'heavy burden' is placed on one who challenges it." White v. New Hampshire Dep't of Corr., 221 F.3d 254, 259 (1st Cir. 2000). A verdict must be upheld unless the evidence presented supports only one conclusion, that the verdict cannot stand. See Walton v. Nalco Chem. Co., 272 F.3d 13, 18 (1st Cir. 2001). All inferences must be drawn in favor of the nonmoving party. Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001).

Issues of liability under the First Amendment and qualified immunity have been addressed at length. See, e.g., Tejada v. Fuentes Agostini, 87 F. Supp. 2d 72 (D.P.R. 2000). In my opinion and order of February 23, 2003, I stated that the determination of whether co-defendants were protected by qualified immunity required a factual finding as to the real motivations behind plaintiff's discharge. (See Docket No. 165, at 6.) Similarly, in my denial of judgment as a matter of law, I found that as to co-defendants Morales, Álvarez, Gierbolini, and Franco, the plaintiff had presented sufficient evidence to justify submitting the case to the jury. (See Opinion and Order, March 11, 2003, Docket No. 18 at, 10-11.) In all, the verdict against co-defendants Morales and Álvarez evidences two pertinent conclusions: (1) that the jury found plaintiff's discharge was motivated by the exercise of his First Amendment rights, and not based on his domestic abuse conviction; and (2) that said finding took co-defendants outside the ambit qualified immunity protection. I find no reason to disturb a jury verdict that I find is consistent with the evidence presented at trial. Therefore, taking all reasonable inferences in light must hospitable to the plaintiff, as I must do, I DENY plaintiff's motion for judgment notwithstanding the verdict.

CIVIL 97-1430 (JAG) (JA)                                5

## II. Co-defendants' Rule 59 Motion

It is firmly established that a new trial should be granted and the verdict set aside if the trial judge "is of the opinion that the verdict is against the clear weight of the evidence," and that a miscarriage of justice will occur if the verdict is allowed to stand. Sheils Title Co. v. Commonwealth Land Title Ins. Co., 184 F.3d 10, 19 (1st Cir. 1999). A review of a damage award must focus on the evidence presented at trial and the court should not overturn a jury award that has substantial basis in the evidence. See Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480, 1488 (1st Cir. 1994).

In addition, a jury award should not be disturbed only because "it is extremely generous or because ... [the court] think[s] [that] the damages are considerably less...." Diefenbach v. Sheridan Transp., 229 F.3d 27, 32 (1st Cir. 2000) (quoting Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir.), cert. denied, 528 U.S. 1021 (1999)). In other words, an award of damages would only be set aside "if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." Id. So it has been held that a defendant challenging an award of damages bears a heavy burden of showing that the award is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Koster v. Trans World Airlines, Inc., 181 F.3d at 34 (quoting Havinga v. Crowley Towing & Transp. Co., 24 F.3d at 1484).

The argument advanced pursuant to Rule 59 is twofold. First, it is the contention that the award of $125,000 for loss of income is against the clear weight of the evidence because "Mr. Tejada simply failed to put forward sufficient evidence that he had loss of income." (Docket No. 184, at 5.) It is also argued by the co-defendants that he has been receiving a $1,300 monthly paycheck from the Puerto Rico National Guard, which according to co-defendants, precludes a finding that the defendant had loss of income at

CIVIL 97-1430 (JAG) (JA)                    6

all. Second, co-defendants claim that even if substantially based on the evidence, the verdict is subject to remittitur. The argument is that the award should have been calculated as the difference between plaintiff's salary at the Department of Justice, namely $1,700, approximately, and his National Guard income, $1,300.

In Mejías-Quirós v. Maxxam Prop. Corp., 108 F.3d 425, 427 (1st Cir. 1997), the court of appeals observed that a jury award may be set aside, and a new trial granted, if such award is excessive or against the weight of the evidence. Indeed, in a challenge to a jury award of economic damages, the court is limited to examining whether the evidence in the record supports the verdict. See Torres v. Wendco of P.R., Inc., No. 95-1844, 1997 U.S. Dist. LEXIS 3182, at *20-21 (D.P.R. Jan. 15, 1997). For example, in Mejías-Quirós, the court held that the award of $25,000 lacked a rational basis in evidence because the evidence presented at trial only established the amount of $4,000 for future medical expenses. Mejías-Quirós v. Maxxam Prop. Corp., 108 F.3d at 428-29.

Moreover, unlike general awards of non-economic losses like pain and suffering that are not subject to a particular dollar amount, loss of earnings, present and future, must be proven by evidence demonstrating the reasonable value of such a loss. Williams v. Missouri Pac. R.R. Co., 11 F.3d 132, 135 (10th Cir. 1993), cited in Mejías-Quirós v. Maxxam Prop. Corp., 108 F.3d at 428. "[U]ncertainty as to the amount of damages does not bar their recovery, ... but a plaintiff 'must establish [his] claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis." Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 4 (1st Cir. 1996) (citations omitted).

Here, the evidence at trial established that at the S.I.B., plaintiff was classified as Agent I, a permanent position. At the time of his discharge in March of 1997, he had a salary of approximately $1,700 a month. He has obviously failed to receive such amounts

CIVIL 97-1430 (JAG) (JA)                    7

since he was wrongfully discharged. The evidence also established that immediately after being fired he started looking for jobs. According to the testimony of Mr. Tejada, he was able to get some work at a gas station. Later he worked for a brief period of time as a distribution clerk for the United States Postal Service until he moved to Florida. He is currently unemployed, receiving a pension from the Department of Veterans Affairs.

Co-defendants admit that plaintiff would have receive a little over $122,000 had he not been fired from his job at the Department of Justice. This is assuming that his $1,700 monthly salary remained the same for the last six years. The amount does not reflect, as plaintiff contend, any automatic salary increases and other benefits like vacation and sick leave. Similarly, the amount does not consider any future loss of income to which plaintiff would be entitled, although he presented no evidence as to such loss. Based on this, I cannot conclude that the award of damages for plaintiff's loss of income lacks a rational basis in the evidence or is clearly against the weigh of the evidence. Indeed, it may be conservative in light of the fact that no salary increases and other benefits were considered, nor was any future loss of income.

Next I turn to co-defendants alternative argument that the award should be reduced taking into consideration the alleged $1,300 monthly payment that plaintiff receives.[3] According to co-defendants, the appropriate calculation of plaintiff's loss of income must be the difference between his salary at the S.I.B. and his National Guard compensation. Thus, the co-defendants claim that the total loss of income to which plaintiff is entitled, is $400 a month, that is a total of $29,000 ($400 x 12 months x 6 years).

Co-defendants' argument is without merit. Even accepting as true the allegation that plaintiff receives $1,300 a month, such figure cannot be included in his loss of income

---

[3]Plaintiff denies receiving such amounts.

CIVIL 97-1430 (JAG) (JA)                                       8

calculation. "[W]hen a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975) (quoting Wicker v. Hoppock, 73 U.S. 94, 99 (1867) (Mem)); see also Rivera-Morales v. Benítez de Rexach, 541 F.2d 882, 886 (1st Cir. 1976) ("In the case of injury of an economic nature[,] the injured party is to be placed as near as possible in the situation he would have been in had the wrong not occurred.").

In this case, to make plaintiff whole, the award of damages for loss of income cannot include the $1,300. If he had the two sources of income at the time he was wrongfully terminated, the only way to restore plaintiff to the position he was before the discharge is to award an amount representative of what he would have made with the two sources of income. That is what the jury did here. Plaintiff had lost his $1,700 salary which totaled $122,000 for the six years he has been out of work at the S.I.B. The jury awarded $125,000. Such award indicates that the jury possibly took into consideration the probable salary increases and benefits that plaintiff would have been entitled to, while considering the fact that plaintiff mitigated his damages by finding other work. I find that there is no reason to set aside the award in this case. After all:

> In the federal system, a trial judge does not sit as a super-juror, free to disregard the considered verdict of a properly instructed jury "merely because he disagrees with it or would have found otherwise in a bench trial." ... Rather, the judge may insist upon a new trial only in those few instances where he supportably concludes that the verdict, if allowed to stand, will work a miscarriage of justice.

Quiñones-Pacheco v. American Airlines, Inc., 979 F.2d 1, 3-4 (1st Cir. 1992) (citations omitted). This is not such case. The litigant contesting the excessiveness of a jury's award of damages bears a particularly heavy burden, Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988), and

CIVIL 97-1430 (JAG) (JA)                           9

> [t]he jury ... is free to run the whole gamut of euphonious notes --to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between--so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand.

Id. "'Translating legal damage into money damages . . . is a matter peculiarly within a jury's ken.'" Toucet v. Maritime Overseas Corp., 991 F.2d 5, 11 (1st Cir. 1993) (quoting Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987)). Co-defendants' motion for a new trial or in the alternative for a remittitur must be DENIED.

## CONCLUSION

In view of above, I find that the verdict in favor of plaintiff and against co-defendants on the First Amendment claim should not be disturbed for the evidence presented was consistent with the jury's finding of liability. Consequently, co-defendants' motion for judgment notwithstanding the verdict is DENIED. Furthermore, the award of $125,000 has substantial basis in the evidence and is not so grossly excessive as to mandate either a new trial or a remittitur. Therefore, co-defendants' Rule 59 motion is also DENIED.

SO ORDERED.

In San Juan, Puerto Rico, this 14th day of April, 2003

JUSTO ARENAS
United States Magistrate Judge