1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

3

4    BERNABE TEJADA-BATISTA,

5    Plaintiff

6                                              CIVIL 97-1430 (JAG) (JA)

    v.

7

8    JOSE FUENTES-AGOSTINI, et al.,

9    Defendants

10

11                              <u>OPINION AND ORDER</u>

12

13       There are several post-trial motions presently before the court.  Plaintiff Bernabé

14  Tejada-Batista moves for an order reinstating him to his position as agent of the Special

    Investigations Bureau at the Puerto Rico Department of Justice. (Docket No. 180.)  In the

15  alternative, plaintiff moves for an award of front pay and prejudgment interest in lieu of

16  reinstatement.  (<u>Id.</u>)  In a separate motion, the plaintiff seeks an award of attorney's fees

17  under 42 U.S.C. § 1988.  (Docket No. 181.)

18       Co-defendant José Fuentes-Agostini moves for an award of attorney's fees under

19  section 1988 claiming that, as the prevailing party (on a Rule 50 motion for judgment as

20  a matter of law), he is entitled to said award because plaintiff's claim against him was

21  frivolous, groundless and vexatious.  (Docket No. 188.)  After consideration of the

22  arguments advanced by the parties, and for the reasons explained below, plaintiff's motion

23  for reinstatement is GRANTED.  Plaintiff's motion for an award of attorney's fees is also

24  GRANTED.  Co-defendant Fuentes-Agostini's motion for attorney's fees is DENIED.

25                                   BACKGROUND

26       Plaintiff Bernabé Tejada-Batista brought this action under 42 U.S.C. § 1983

27  claiming, <i>inter alia</i>, that he was unlawfully discharged from his employment at the

28





1   CIVIL 97-1430 (JAG) (JA)                    2

2

3

4   Department of Justice for exercising his First Amendment rights. The case was called for

5   jury trial on February 24, 2003, and at the close of plaintiff's evidence, all the defendants

6   moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil

7   Procedure. On a ruling from the bench, I granted co-defendant Fuentes-Agostini's motion

8   and dismissed the case as to him. I similarly dismissed the case against two other co-

9   defendants. An opinion and order was issued on March 11, 2003, explaining the basis for

10  my ruling on the Rule 50 motion. The case proceeded with the remaining four co-

11  defendants and the jury returned a verdict against two of them.

12      Mr. Tejada-Batista now moves for reinstatement in his position as agent for the

13  Special Investigations Bureau. In the alternative, he requests an award of front pay and

14  prejudgment interest. He invokes the equitable powers of this court under section 1983.

15  In addition, plaintiff filed a motion seeking an award of attorney's fees as the prevailing

16  party in this lawsuit pursuant to 42 U.S.C. § 1988. So did co-defendant Fuentes-Agostini.

17  I address the motions in the order they are presented.

18                          DISCUSSION

19                  I. Motion for Reinstatement

20      The crux of plaintiff's arguments is that reinstatement is the equitable remedy

21  appropriate to effectuate the purpose of the Civil Rights Act. It is further claimed by

22  plaintiff that reinstatement is an indispensable part of just compensation to an employee

23  discriminated against because of his exercise of First Amendment rights, and that in the

24  exercise of its discretion, the court should grant the equitable relief sought. In the

25  alternative, plaintiff argues that if reinstatement is not feasible, the court should order a

26  front pay award of $52,848. This amount is calculated by plaintiff as the salary he was

27  receiving prior to the discharge, multiplied by the number of years he would have work at

28

1  CIVIL 97-1430 (JAG) (JA)                    3

2

3

4  the Department of Justice until retirement. Plaintiff also seeks that said award of front pay

5  include pre-judgment interest.

6      The First Circuit has held that "[o]ne of the remedies available for a political

7  discharge in violation of first amendment rights is reappointment." Santiago-Negrón v.

8  Castro-Dávila, 865 F.2d 431, 437 (1st Cir. 1989). However, the fact that reinstatement is

9  available does not mean that it is inevitable. See Rosario-Torres v. Hernández-Colón, 889

10 F.2d 314, 321 (1st Cir. 1989). To say that reinstatement is available but not inevitable is

11 to declare that it is a remedy that lies within the discretion of the trial court. Id. (citing

12 Aggarwal v. Ponce Sch. of Medicine, 745 F.2d 723, 727 (1st Cir. 1984)). Reinstatement

13 is an equitable remedy and "the hallmark of equity is the ability to assess all relevant facts

14 and circumstances and tailor appropriate relief on a case by case basis." Rosario-Torres v.

15 Hernández-Colón, 889 F.2d at 321 (citing Burton v. Cascade Sch. Dist. Union High Sch.

16 No. 5, 512 F.2d 850, 853-54 (9th Cir. 1975)). In other words, "[o]nce a right and a

17 violation have been shown, the scope of a district court's equitable powers to remedy past

18 wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Rosario-

19 Torres v. Hernández-Colón, 889 F.2d at 321 (quoting Swann v. Charlotte-Mecklenburg Bd.

20 of Educ., 402 U.S. 1, 15 (1970)).

21     A district court must apply its discretion to determine whether under the

22 circumstances, reinstatement is appropriate. See Rosa-Velázquez v. Figueroa-Gómez, 996

23 F.2d 425, 428 (1st Cir. 1993). Some relevant factors that must be considered are:

24              1) the strength of the evidence proving the first amendment
                violation; 2) whether the discharged employee has found
25              comparable work; 3) whether there is a property right in the
                position held by the employee; 4) the eligibility of the employee
26              for the position, and whether or not the employee met
                established qualifications; 5) whether or not the reinstatement
27              would implicate federalism and comity concerns; 6) the length
                of time which has elapsed between the dismissals and
28

1  CIVIL 97-1430 (JAG) (JA)                    4

2

3

4              reinstatement; and 7) whether plaintiffs were given a significant
               monetary award thereby making denial of reinstatement
5              acceptable.

6  Rodríguez-Vázquez v. López-Martínez, No. Civ. 01-1541(JP), 2003 WL 716661, at *1

7  (D.P.R. Feb. 21, 2003); see also Rosa-Velázquez v. Figueroa-Gómez, 996 F.2d at 429;

8  Acevedo-Díaz v. Aponte, 1 F.3d 62, 74 n.14 (1st Cir. 1993); Hiraldo-Cancel v. Aponte, 925

9  F.2d 10, 13-14 (1st Cir. 1991); Rosario-Torres v. Hernandez-Colón, 889 F.2d at 322-24.

10      The consideration of these factors is made without the benefit of any argument that

11  the Department of Justice might have advanced against reinstatement.  This is so because

12  the co-defendants have failed to file a timely opposition to plaintiff's motion for

13  reinstatement.  In any event, after considering the merits of plaintiff's motion and

14  balancing the factors that militate in favor of and against reinstatement, I conclude that

15  plaintiff should be reinstated in the position he held at the Special Investigations Bureau.

16      First, at least against four of the original seven co-defendants, the evidence presented

17  at trial was sufficient to justify having the jury determine that plaintiff's first amendment

18  rights were violated.  See Tejada-Batista v. Fuentes-Agostini, No. 97-1430, 2003 U.S. Dist.

19  LEXIS 3651, at *15 (D.P.R. Mar. 10, 2003).  Even though the jury found in favor of

20  plaintiff against only two of these defendants, the evidence presented pointed to a possible

21  finding of liability.  Reinstatement in this sense is warranted.

22      Second, it has been established that plaintiff has been unable to find comparable

23  work since the discharge.  He worked at a gas station and at the post office according to

24  what the evidence at trial revealed, but as of today, is unemployed.  Thus, this factor

25  weighs substantially in favor of reinstatement.

26      Third, plaintiff had a property right in the position he held at the Department of

27  Justice.  He was not an employee at will; rather, he had an expectation of continued

28

1  CIVIL 97-1430 (JAG) (JA)                    5

2

3

4  employment at the time he was discharged.  Therefore, this factor tips the scales in

5  plaintiff's favor as well.

6       Additionally, there is nothing in the record to suggest that plaintiff is not eligible for

7  the position he previously held as an agent for the Special Investigations Bureau or that a

8  decision in favor of reinstatement would implicate federalism or comity concerns.  The only

9  factor that seems to go against plaintiff is the length of time which has elapsed between the

10  dismissal and reinstatement.  Here, over six years have passed; however, in light of the fact

11  that all other factors are decided in plaintiff's favor, the length of time weighs lightly

12  against reinstatement.  Denial of reinstatement would not be acceptable if one considers

13  an award of damages ($125,000 for loss of income) that barely covered what plaintiff failed

14  to earn in six years.  In the balance of these factors, I find that reinstatement is warranted.

15       Finally, I am mindful that in this context, a court-ordered reunion between employer

16  and employee usually burdens government operations with the hostility and antagonism

17  that as a consequence is revived in the aftermath of litigation.  Hiraldo-Cancel v. Aponte,

18  925 F.2d at 13-14.  Nevertheless, "such routinely 'incidental' burdens, in their accustomed

19  manifestations, are foreseeable sequelae [sic] of defendant's wrongdoing, and usually

20  insufficient, without more, to tip the scales against reinstatement when first amendment

21  rights are at stake in a section 1983 action."  Rosario-Torres v. Hernández-Colón, 889 F.2d

22  at 322.  After all, although not a presumptive entitlement under section 1983,

23  reinstatement may offer significant deterrent and curative value in appropriate cases.

24  Hiraldo-Cancel v. Aponte, 925 F.2d at 13.  Thus, "'[i]f an employer's best efforts to remove

25  an employee for unconstitutional reasons are presumptively unlikely to succeed, there is,

26  of course, less incentive to use employment decisions to chill the exercise of constitutional

27  rights.'"  Hiraldo-Cancel v. Aponte, 925 F.2d at 13 (quoting Allen v. Autauga County Bd.

28

1   CIVIL 97-1430 (JAG) (JA)                    6

2

3

4   of Educ., 685 F.2d 1302, 1306 (11th Cir. 1982)).  Accordingly, plaintiff's motion for

5   reinstatement is GRANTED.

6                      II.  Plaintiff's Motion for Attorney's Fees

7          Plaintiff argues that as the prevailing party in this section 1983 action, he is entitled

8   to recover attorney's fees under 42 U.S.C. § 1988.[1]  It is plaintiff's contention that

9   although the language of the statute provides the court with the discretion of whether or

10  not to award such attorney's fees, the Supreme Court has stated that absent special

11  circumstances, attorney's fees should be awarded and that the discretion of the court is

12  narrow.  It is further claimed by the plaintiff that there are no special circumstances in this

13  case that would make the award of attorney's fees unjust.  Plaintiff attaches to his motion

14  a detailed memorandum of the legal services rendered by counsel and the time spent.  The

15  fees requested are at a rate of $200 per out-of-court hours worked and $225 for in-court

16  hours worked.  The total requested is $83,193 (377.15 out-of-court hours and 34.50 in-

17  court hours).  Plaintiff's request has not been opposed by the co-defendants.

18         Under the so-called American Rule, parties are ordinarily required to bear their own

19  attorney's fees and the prevailing party is not entitled to collect from the loser.

20  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S.

21  598, 602 (2001) (citing Alyeska Pipeline Servs. Co. v. Wilderness Soc'y, 421 U.S. 240, 247

22  (1975)).  Absent explicit statutory authority, a prevailing party will not collect an award

23  of attorney's fees.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &

24  Human Res., 532 U.S. at 602.  Congress has, however, authorized the award of attorney's

25

26  _____

27         [1]"In any action or proceeding to enforce a provision of section[] . . . [42 U.S.C. §
    1983], the court, in its discretion, may allow the prevailing party, other than the United
28  States..., a reasonable attorney's fee as part of the costs...."  42 U.S.C. § 1988(b) (2003).

1   CIVIL 97-1430 (JAG) (JA)                    7

2

3

4   fees under the Civil Rights Act, 42 U.S.C. § 1988.  In <u>White v. New Hampshire Dep't of</u>

5   <u>Employment Sec.</u>, 455 U.S. 445, 451-52 (1982) the Court stated that:

6               Section 1988 provides for awards of attorney's fees only to a
                "prevailing party."  Regardless of when attorney's fees are
7               requested, the court's decision of entitlement to fees will
                therefore require an inquiry separate from the decision on the
8               merits--an inquiry that cannot even commence until one party
                has "prevailed."  Nor can attorney's fees fairly be characterized
9               as an element of "relief" indistinguishable from other elements.
                Unlike other judicial relief, the attorney's fees allowed under §
10              1988 are not compensation for the injury giving rise to an
                action.  Their award is uniquely separable from the cause of
11              action to be proved at trial.

12  <u>Id.</u> (citation omitted).  Plaintiff has to be the "prevailing party"; that is, he has to succeed

13  on any significant issue in litigation which achieves some of the benefit he sought in

14  bringing the lawsuit in the first place. <u>See Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

15  That does not mean that plaintiff has to prevail on every claim and obtain all relief

16  sought—some relief on the merits is enough. <u>See Richardson v. Miller</u>, 279 F.3d 1, 3 (1st

17  Cir. 2002).

18          Furthermore, to calculate a reasonable amount of attorney's fees, the court must

19  determine the hours reasonably expended on the litigation, multiplied by a reasonable

20  hourly rate. <u>See Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir.

21  2001). Under this lodestar approach, the trial judge is supposed to calculate the time spent

22  by counsel, subtracting duplicative, unproductive and excessive hours, and then apply the

23  prevailing rates in the community taking into account the experience, qualifications and

24  competence of the attorneys involved. <u>Id.</u>  In fashioning the award, the records submitted

25  by the attorneys are usually the starting point, but the court's determination is by no

26  means circumscribed to what the attorneys submit is the time spent or the rate they charge.

27  <u>See Gay Officers Action League v. Puerto Rico</u>, 247 F.3d at 295.  It is the duty of the court

28

1  CIVIL 97-1430 (JAG) (JA)                    8

2

3

4  "to winnow out excessive hours, time spent tilting at windmills, and the like." Id. at 296

5  (citing Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1ˢᵗ Cir. 1997)).

6          In the application of these principles to the present case, I note two things. First,

7  I find that there are no special circumstances that would render the award of attorney's fees

8  unjust for the defendants. Second, there is no question that the plaintiff is the "prevailing

9  party" under section 1988, where the jury found in his favor against two of the four

10 remaining defendants. In effect, the jury expressly found that plaintiff had been retaliated

11 against for exercising his First Amendment rights, finding *a fortiori* that they had done so

12 in violation of such constitutional rights that are clearly established. Additionally, even

13 though the plaintiff was not successful against all of the defendants, his claims are so

14 interrelated that the work that had to be performed was the same be it for seven or just one

15 defendant. It has been held that if only partial success is achieved, the total of hours spent

16 on the litigation as whole may be excessive. See Ramos-Padró v. Puerto Rico, 100 F. Supp.

17 2d 99, 107 (D.P.R. 2000) (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992)). But, when

18 plaintiff's claims are based on different legal theories and facts, attorney's fees should not

19 be allowed for the unsuccessful claims that are not related to the successful ones. See

20 Ramos-Padró v. Puerto Rico, 100 F. Supp. 2d at 107 (citing Texas State Teacher's Ass'n

21 v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989)). They are, however, related when

22 they are based on the same legal theories, they involve a common core of operative facts,

23 or counsel devoted her time to work in the case as a whole making it difficult to allot the

24 services to the differing claims. See Ramos-Padró v. Puerto Rico, 100 F. Supp. 2d at 107

25 (citing Schneider v. Colegio de Abogados de Puerto Rico, 187 F.3d 30, 43 (1ˢᵗ Cir. 1999)

26 (Lipez, J., concurring)).

27

28

1  CIVIL 97-1430 (JAG) (JA)                    9

2

3

4    Plaintiff filed a sworn statement as well as a detailed memorandum outlining in

5  categories, chronological order, type of work performed and hours spent on the legal

6  services rendered by his counsel.  He claims that he is entitled to recover reasonable

7  attorney's fees for 377.15 out-of-court hours worked and 34.50 in-court hours worked by

8  his attorney.  I find no reason to alter such computation of the time spent in view of the

9  fact that (1) the co-defendants do not dispute it themselves and; (2) the calculation seems

10  conservative if the court considers that this action was filed six years ago and has been

11  replete with procedural events.  As such, the only issue that remains for determination is

12  the reasonableness of the rate proposed by plaintiff.

13    Plaintiff claims that a reasonable rate for counsel is $200 an hour for out-of-court

14  services and $225 an hour for in-court work.  Under the lodestar approach, the hourly rate

15  should be "in line with those prevailing in the community for similar services by lawyers

16  of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S.

17  886, 895 n.11 (1984).  The party seeking the fees has the burden of showing that the rates

18  sought are comparable with those in the community.  Id.

19    Plaintiff fails to show that the rates sought are comparable to those in the

20  community.  In addition, I find that a rate of $225 for in-court work and $200 for out-of-

21  court work is somewhat high.  Therefore, I need to engage in a separate inquiry as to what

22  would be a reasonable rate in accord with those prevailing in the community for an

23  attorney with the experience and skill of Irma R. Valldejuli.

24    Irma R. Valldejuli has been an attorney for 28 years.  She graduated magna cum

25  laude from the University of Puerto Rico Law School in 1975.  There, she was a member

26  of the Law Review and published an article as a student.  She clerked for two United States

27  district judges in this district including now First Circuit Judge Juan R. Torruella.  Since

28

1   CIVIL 97-1430 (JAG) (JA)                    10

2

3

4   1989, Attorney Valldejuli has been a solo practitioner handling mostly criminal cases under

5   the Criminal Justice Act and civil rights litigation.  Yet, the only published case in which

6   she has been awarded attorney fees is a 1991 case where the court found the rate of $75

7   an hour appropriate.  See United States v. One Rural Lot, 770 F. Supp. 66, 71 (D.P.R.

8   1991). Other more recent section 1983 cases in this district reflect the award of higher and

9   lower rates to attorney's with somewhat similar experience.[2]  Thus, since the cases are not

10  all in agreement and since plaintiff fails to show that the rate sought by him is comparable

11  to those prevailing in the community, I find that a rate of $150 per out-of-court hours

12  worked and $175 per in-court hours worked is more in line with the rates prevailing in our

13  legal community.  Therefore, plaintiff's motion is GRANTED and he is awarded the

14  amount of $56,572.50 (377.15 x $150) for out-of-court hours worked and $6,037.50

15  (34.50 x $175) for in-court hours worked.  The total awarded is $62,610.00.

16          III.  Co-defendant Fuentes-Agostini's Motion for Attorney's Fees

17          Co-defendant Fuentes-Agostini claims that he is the prevailing party within the

18  meaning of section 1988.  He also argues that as the prevailing party, he is entitled to an

19  award of attorney's fees because plaintiff filed a frivolous and vexatious lawsuit against him,

20  with unreasonable contentions and without foundation.  It is also Fuentes-Agostini's

21  contention that in this case "plaintiff clearly incurred in conduct which caused unnecessary

22  and vexatious litigation to be incurred by the defendant." (Docket No. 188, at 5, ¶ 14.)

23  According to him, plaintiff knew early in the litigation that a claim against him was

24

25  _____

26          [2]See, e.g., Rodríguez-Sostre v. Municipio de Canóvanas, Civil No. 99-2094(JAG),
27  2003 U.S. Dist. LEXIS 3630, at *6-7 (D.P.R. Mar. 10, 2003); Santiago v. Mercado, 175
    F. Supp. 2d 164, 167-172 (D.P.R. 2001); Libertad v. Sánchez, 134 F. Supp. 2d 218, 230-
28  35 (D.P.R. 2001); Ramos Padró v. Puerto Rico, 100 F. Supp. 2d at 104-08.

1  CIVIL 97-1430 (JAG) (JA)                    11

2

3

4  groundless. Thus he requests an award of attorney's fees in the amount of $34,152.50

5  (359.25 hours worked at a rate of $125.00 an hour).

6          Plaintiff opposes such an award. (Docket No. 189.) It is plaintiff's position that the

7  claim filed was not frivolous and that continuing to pursue a claim against Fuentes-Agostini

8  was reasonable. Moreover, according to plaintiff, even when the court found that the

9  evidence presented at trial was insufficient as to co-defendant Fuentes-Agostini to submit

10 the case to the jury, that fact alone is also insufficient for a finding that at the time of the

11 filing of this lawsuit and its subsequent prosecution, plaintiff insisted in pursuing

12 unfounded claims. Finally, plaintiff contends that even if the claims are found to be

13 groundless, the court should still use its discretion and deny the award.

14          The standard under 42 U.S.C. § 1988 is that in civil rights cases, fee-shifting in favor

15 of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant

16 is the exception. See Bercovitch v. Baldwin Sch., Inc., 191 F.3d 8, 10 (1st Cir. 1999) (citing

17 Casa Marie Hogar Geriátrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994)). In

18 its discretion, a district court may award attorney fees to a prevailing defendant but only

19 upon a finding that the claim brought against said defendant was frivolous, unreasonable

20 or without foundation even though not brought in bad faith. See Christianburg Garment

21 Co. v. E.E.O.C., 434 U.S. 412, 421 (1978); see also Tang v. R.I., Dep't of Elderly Affairs,

22 163 F.3d 7, 13 (1st Cir. 1998). "Prevailing defendants, under this heightened standard,

23 have a more difficult showing to make to obtain attorney's fees than do successful

24 plaintiffs." Bercovitch v. Baldwin Sch., Inc., 191 F.3d at 10. In determining whether the

25 standard has been met by a prevailing defendant, the court must assess the claim at the

26 time the complaint was filed and avoid the *post-hoc* reasoning that because plaintiff did not

27

28

1   CIVIL 97-1430 (JAG) (JA)                    12

2

3

4   ultimately prevail, the claim must have been frivolous or unfounded.  Tang v. R.I., Dep't

5   of Elderly Affairs, 163 F.3d at 13.

6         On the facts of this case, I cannot necessarily conclude that at the time of the filing

7   of the complaint the claim against Fuentes-Agostini was completely meritless.  However,

8   I do not reach the question of whether the claim was frivolous since the co-defendant has

9   failed—despite stating that he had done so—to file a memorandum detailing the hours

10  worked by his attorneys.  (See Docket No. 188, at 4, ¶ 12.)  It has been held that "the

11  absence of detailed contemporaneous time records, except in extraordinary circumstances,

12  will call for a substantial reduction in any award or, in egregious cases, disallowance.

13  Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 8 (1st Cir. 1993) (quoting

14  Grendrel's Den, Inc., v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984)).  Attorneys must submit

15  a full and precise accounting of their time, including the number of hours, dates, and the

16  nature of the work performed.  Deary v. City of Gloucester, 9 F.3d 191, 197-98 (1st Cir.

17  1993) (citing Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986)).  The

18  failure to submit said accounting may result in the fees being reduced or in their denial

19  altogether.  Deary v. City of Gloucester, 9 F.3d at 198.

20        Here, without a detailed accounting of the hours worked by co-defendant's

21  attorneys, the court is in no position to determine which hours are recoverable or to

22  winnow out duplicative, unproductive, or excessive hours as the court is supposed to do.

23  See Gay Officer Action League v. Puerto Rico, 247 F.3d at 295.  Consequently, without

24  considering the merits of an award of attorney's fees to co-defendant Fuentes-Agostini, the

25  motion is DENIED for lack of a contemporaneous and reliable accounting of the work

26  done.

27

28

CIVIL 97-1430 (JAG) (JA)                              13

## CONCLUSION

In view of the above, plaintiff's motion for reinstatement is GRANTED. Plaintiff's motion for an award of attorney's fees under 42 U.S.C. § 1988 is also GRANTED. Co-defendant Fuentes-Agostini's motion for the imposition of attorney's fees under section 1988 is DENIED.

## ORDER

The Puerto Rico Department of Justice is hereby ORDERED to reinstate plaintiff Bernabé Tejada-Batista to the position he held as an agent for the Special Investigations Bureau. The Department of Justice is FURTHER ORDERED to provide plaintiff with the salary and benefits he would have been earning had he not been discharged.

SO ORDERED

At San Juan, Puerto Rico, this 22nd day of May, 2003.

JUSTO ARENAS
United States Magistrate Judge